# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORI QUIST, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10 C 475 |
| SPIEGEL & UTRERA, P.A., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lori Quist has sued her former employer, Spiegel & Utrera, P.A. ("S&U"). She asserts claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA") for disability discrimination, sexual harassment, and retaliation. S&U has moved for summary judgment. For the reasons stated below, the Court grants S&U's motion in part and denies it in part.

## Background

Quist is a forty-seven year old attorney and a former employee of S&U, a Florida legal services corporation. S&U is based in Miami and maintains satellite offices in other cities, including Chicago. It hired Quist to serve as the managing attorney of its Chicago office on March 21, 2006. Quist's responsibilities as managing attorney included counseling clients on setting up business entities and preparing the documents necessary to do so. S&U's president, Lawrence Spiegel, terminated Quist on June 18, 2007.

On or about February 12, 2007, Quist was diagnosed with cervical cancer and/or dysplasia. On two occasions following her diagnosis, she received medical treatment known as a "loop electrosurgical excision procedure" ("LEEP"). LEEP is used to treat persistent low-grade dysplasia and high-grade cervical dysplasia and results in the removal of cervical tissue. According to the American Congress of Obstetricians and Gynecologists, women who undergo LEEP may have difficulty becoming pregnant or maintaining a pregnancy. See Def.'s Mem., Ex. 8 at 2.

Quist contends that her supervisors at S&U began discriminating against her and treating her differently in various ways following her diagnosis. Specifically, Quist testified that prior to her diagnosis, Spiegel allowed her to make personal calls so long as she completed her work. During Quist's trip to S&U's Miami office in March 2007, however, Spiegel yelled at Quist for making personal phone calls and berated her on several other occasions. Quist's trip occurred less than one month after her diagnosis and less than one week after her first LEEP treatment. Additionally, Quist testified that her supervisors consistently praised her work performance prior to her diagnosis but began reprimanding her thereafter. S&U counters that its employees expressed concerns about Quist's performance on many occasions prior to her diagnosis.

Quist also asserts that she was subjected to harassment by S&U employees. Most of her allegations concern the behavior of Spiegel, who visited the Chicago office on four or five occasions during Quist's employment and encountered Quist during her visits to the Miami office in March 2006 and March 2007. Quist contends that Spiegel often talked about sex in conversations with her; told Quist that she sounded like a 'bimbo' and needed blonde hair; leered at Quist and hugged her inappropriately; made

2

comments about other female employees' appearances around Ms. Quist; walked around his office partially nude in front of other employees; and urinated in his office bathroom with the door open.  Quist also testified that another S&U employee, Kevin Hess, sent Quist e-mails telling her that she was a "complete mess" and berated her for her job performance.  Pl.'s Rule 56.1(b)(3) Resp. ¶ 23.

Finally, Quist contends that S&U retaliated against her for complaining that she had been targeted for discrimination and harassment by S&U employees.  Specifically, she alleges that she told Spiegel on February 15, 2007 that she was being treated differently because of her medical condition.  According to Quist, Spiegel responded that he thought highly of her and that no one at S&U was discriminating against her.  Quist also asserts that she sent an e-mail to Spiegel on March 27, 2007 complaining that Hess was harassing her.  Quist asserts that S&U took no actions to prevent or remedy this alleged misconduct at any point before Spiegel terminated her employment on June 18, 2007.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).

**1.    Disability discrimination claim**

In count one, Quist seeks to recover for S&U's discrimination against her based upon a disabling medical condition. She contends that this condition, cervical cancer and/or dysplasia, substantially limited her ability to reproduce. S&U responds that it is entitled to summary judgment on count one because Quist cannot show that (1) she was disabled within the meaning of the ADA or (2) S&U discriminated against her based upon her alleged disability.

**a.    "Disability"**

In assessing whether Quist's medical condition is a "disability," the Court applies the ADA as it existed prior to the enactment of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009 and does not apply retroactively. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009). The prior version of the ADA defined "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *EEOC v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008) (citing 42 U.S.C. § 12102(2) and 29 C.F.R. 1630.2(g)).

"Whether a particular impairment substantially limits a major life activity is a case-specific, individualized inquiry." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 781 (2007). An impairment is substantially limiting if the person "is either unable to perform a major life function, or is significantly restricted in the duration, manner, or condition under which the individual can perform a particular major life activity, as compared to the

4

average person in the general population." *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001).

S&U agrees that Quist's cervical cancer and/or dysplasia constitutes a physical impairment under the ADA and that reproduction is a "major life activity" under the ADA. It contends, however, that this impairment did not substantially limit Quist's ability to reproduce because Quist became pregnant after her LEEP treatments. Def.'s Mem. at 6-8; *see also Bragdon v. Abbott*, 524 U.S. 624, 639 (1998). At the same time, S&U agrees that women who undergo LEEP face "some risks" in conceiving or maintaining a pregnancy. Pl.'s Rule 56.1(b)(3) Resp. ¶ 33; *see also* Def.'s Mem., Ex. 8 at 2 (publication of the American Congress of Obstetricians and Gynecologists noting that LEEP "has been associated with an increased risk of future pregnancy problems" and "may make it more difficult to become pregnant"). Further, Quist testified that her treating physician advised her that the LEEP treatments significantly limited her prospects of becoming pregnant. Quist Dep. 25:1-6 ("I went through and started in vitro fertilization. . . . [A]t that point, the possibility of me ever having a child was pretty much zero, because [the] doctor said the scarring would probably be so severe, and she said they removed 80 [percent] of my cervix."). Based on this evidence, a reasonable jury could conclude that Quist's medical condition substantially limited her ability to reproduce.

### b. Evidence of discrimination

A plaintiff may prove discrimination under the ADA using either the direct or indirect method of proof. Under the direct method, "the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did

5

for illegal reasons." *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). Direct evidence is typically "'an admission by the decision-maker that his actions were based upon the prohibited animus'"; circumstantial evidence is "evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).

By contrast, to establish a prima facie case of disability discrimination indirectly, a plaintiff must demonstrate that "(1) he is disabled under the ADA, (2) he was meeting his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). If the plaintiff can do so, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* The plaintiff must then show that reason to be pretextual. *Id.*

A reasonable jury could, as indicated earlier, find that Quist was disabled, and it is undisputed that she suffered an adverse employment action (termination). As discussed below, she has also offered evidence suggesting that she was meeting S&U's legitimate expectations. Quist has offered no evidence, however, that she was treated worse than a similarly situated employee without a disability. In her opposition brief, Quist identifies no such employee. For this reason, she has not established a prima facie case of discrimination under the indirect method of proof.

Quist has, however, shown a genuine issue of fact under the direct method of proof. She testified that her superiors at S&U consistently praised her work in the

months preceding her diagnosis. Though S&U contends there were problems with Quist's performance throughout her employment, Quist offers documentary evidence that Spiegel and other S&U employees praised her performance consistently between May 2006 and February 2007, the month in which she received her diagnosis. *See, e.g.,* Pl.'s Rule 56.1(b)(3) Stmt., Exs. 4-28. Based on this evidence, a reasonable jury could conclude that S&U discriminated against Quist because of her disability. Summary judgment is therefore inappropriate on count one.

**2.    Sexual harassment claim**

"To establish a prima facie case of sexual harassment under Title VII, a plaintiff must show that 1) she was subjected to unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). S&U does not dispute that Quist has shown that there are genuine issues of material fact on the first, second, and fourth elements of the test outlined in *Boumehdi*. Def.'s Mem. at 2-3.

To satisfy the third element of this test, the plaintiff must show that the harassment was both objectively and subjectively offensive. *Boumehdi*, 489 F.3d at 788. As discussed above, Quist has offered evidence that Spiegel engaged in inappropriate physical contact with her and made sexually charged statements to her and in the presence of other employees. S&U contends that this conduct was not sufficiently pervasive because Spiegel and Quist worked in the same office on only a few occasions. The Court concludes that a reasonable jury could find this conduct

7

severe enough to create a subjectively and objectively hostile atmosphere. Summary judgment is thus inappropriate on count two.

**3.      Retaliation claim**

In count three, Quist alleges that S&U retaliated against her for complaining about discrimination and harassment on several occasions between February 2007 and March 2007. *See* Compl., Ex. C (e-mail to Spiegel dated March 27, 2007); Pl.'s 56.1(b)(3) Stmt. ¶ 14 (complaint to Spiegel in early March); Def.'s 56.1(A)(3) Stmt. ¶ 37 (complaint to Spiegel on February 15, 2007). S&U contends that Quist has not shown a direct causal connection between these complaints and her termination and has not established a prima facie case of retaliation for purposes of the indirect method of proof.

A plaintiff may prove retaliation using direct or indirect proof. The direct method requires evidence of a protected activity by the employee, adverse action by the employer, and a causal connection between the two. *Boumehdi,* 489 F.3d at 792. The plaintiff may also "offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* Under the indirect method, a plaintiff must provide evidence that (1) she engaged in protected activity; (2) the defendant took a materially adverse action against her; (3) the plaintiff was performing her job satisfactorily; and (4) the plaintiff was treated worse than a similarly situated employee who had not engaged in protected activity. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). The burden then shifts to the defendant to offer a legitimate, non-discriminatory basis for its actions, which the plaintiff must then demonstrate to be

pretextual. *Id.*

Quist has offered no evidence that any similarly situated employee who did not complain about discrimination was treated better than her. As with her discrimination claim, Quist supports her retaliation claim without drawing comparisons regarding how S&U treated its other employees. *See, e.g.,* Pl.'s Resp. at 8-10 (discussing evidence of S&U's early praise for Quist's work and its later mistreatment and criticism of her work following her diagnosis). Therefore, Quist has not established a prima facie case of retaliation via the indirect method.

S&U also asserts that Quist cannot establish retaliation directly because she has not presented evidence raising a genuine issue of fact regarding causation. Def.'s Mem. at 14. In response, Quist contends that issues of fact remain regarding whether S&U began reprimanding her and treating her poorly after her diagnosis. Pl.'s Resp. at 8-10. As noted above, these disputed facts preclude summary judgment on Quist's discrimination claim. Retaliation and discrimination, however, are distinct claims. Quist's evidence that S&U began mistreating her after her diagnosis would, as the Court has determined, permit a reasonable jury to find that S&U discriminated against her based upon her medical condition. It does not, however, create a genuine issue of fact regarding the separate question of whether S&U terminated Quist because of her complaints about discrimination and harassment. To do so, Quist must offer evidence suggesting that her complaints were the cause of the adverse employment actions. *Boumehdi,* 489 F.3d at 792. Evidence that her *disability* was causally connected to her termination does not satisfy this requirement.

The only other evidence that Quist offers in support of a causal connection is that

her termination occurred three to four months after she engaged in protected activity. Standing alone, however, suspicious timing "is rarely sufficient to defeat a motion for summary judgment." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 736 (7th Cir. 2011). To be sure, "when considered with other circumstances, the temporal proximity between termination and" a plaintiff's protected activity "may satisfy the plaintiff's burden in some cases." *Goetzke v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir. 2002). Suspicious timing alone can also create a triable issue of fact in "an extreme case" where the adverse employment action "comes on the heels of the protected activity." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (internal quotation marks omitted). But Quist has offered no other circumstantial evidence of retaliatory motive, such as statements hinting that S&U intended to punish her or evidence suggesting that other employees who engaged in protected activity faced adverse actions as well. *Boumehdi,* 489 F.3d at 792.

As a result, Quist's only evidence is the temporal relationship between her complaints and her termination. She made her complaints three to four months before S&U fired her. The Seventh Circuit has held that temporal gaps of this length are insufficient to show causation. *See, e.g., Longstreet v. Illinois Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) ("[Plaintiff's] only evidence of a connection is the timing; the transfer occurred 4 months after the second complaint. This is insufficient."); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) ("Because plaintiffs have shown no evidence other than the three month gap between their EEOC charges and Exxon's decision not to rehire them, one could not reasonably conclude that the two events are causally related to one another").

For these reasons, the Court concludes that no reasonable jury could find that S&U retaliated against Quist for her complaints by terminating her employment.

**Conclusion**

For the reasons stated below, the Court grants defendants' motion for summary judgment [docket no. 30] as to count three and denies it as to counts one and two. The case is set for a status hearing on July 11, 2011 at 9:30 a.m. for the purposes of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 1, 2011